JAMES B. SMITH, Respondent, *v.* PHEBE G. MOLLESON, Appellant.

*Bond of indemnity — consideration therefor — estimates of work performed, how and by whom computed.*

The letting of a contract on condition that the persons to whom it is awarded shall furnish security for the faithful performance thereof, furnishes a good consideration to sustain a bond given as such security.

The surety to a contract is released by a substantial change thereof by the parties thereto without his consent.

A contract was made whereby the contractors agreed to and with their employer to furnish, cut, set and clean all the new granite work which the employer had agreed to furnish in the alteration of a certain building, it being provided therein that payment for the work was to be made in monthly payments, not to exceed eighty per cent of the estimated value of the work performed on the building, and by a final payment. The contract did not, however, in terms provide by whom such estimate should be made.

*Held,* that, under the circumstances, the contract authorized payments based on an estimate of work actually performed, including stone wholly or partially ready for setting, as well as stone set;

That in the phrase "performed on the buildings," the word "on" meant "in reference or relative to;"

That it was fair to presume that the estimates were to be made by the architects having charge of the work.

APPEAL by the defendant, Phebe G. Molleson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 10th day of April, 1893, upon the verdict of a jury directed by the court after a trial at the New York Circuit.

*William C. Beecher*, for the appellant.

*Jacob F. Miller*, for the respondent.

PARKER, J.:

In October, 1888, the plaintiff entered into a contract with the city of New York to enlarge the American Museum of Natural History in Manhattan square. The contract provided that certain portions of the building exposed to view on the exterior should be faced with granite.

Shortly thereafter plaintiff made a contract with Pratt & Molleson to furnish, cut, set and clean all the new granite work which plaintiff had contracted to furnish.

Pratt & Molleson gave to plaintiff a bond in the penal sum of $6,000, conditioned that they would faithfully perform their contract. This they did not do. Hence this action against their surety, who assigns two grounds of defense : 1. That the bond is without consideration to support it. 2. That the plaintiff and Pratt & Molleson varied the terms of the contract.

Touching the question of the want of consideration, it appears that before the contract was made between the plaintiff and Pratt & Molleson, it was agreed that if the contract should be awarded to the latter, security for faithful performance on their part should be furnished by them.

Plaintiff so testifies, and the senior member of the firm who were the principals in the bond conceded it.

In accordance with their promise, the making of which was a condition precedent to the awarding of the contract, they presented to the plaintiff the bond in suit, which recited the making of the contract between Smith and Pratt & Molleson, and briefly described the work which Pratt & Molleson had therein covenanted to perform, and the compensation to be paid therefor, and it was conditioned that Pratt & Molleson should faithfully perform their contract, or that they should pay such sum of money as the other party to the contract should suffer by reason of a failure of performance, not exceeding $6,000.

It is apparent that the parties to the contract, as well as the surety on the bond, understood that the giving of the bond was requisite in order to secure to Pratt & Molleson the contract, and that the purpose of it was to secure Smith against loss in case of a failure of performance.

The letting of the contract to Pratt & Molleson on condition that they should furnish security for their faithful performance of the contract, furnished a good consideration to sustain the bond given. This proposition is sufficiently supported in the reasoning of the court in *Erie County Savings Bank* v. *Coit* (104 N. Y. 532–536).

The second defense is sought to be founded on that principle of the law of suretyship which gives to a substantial variation of a contract by the parties to it, without the consent of the surety, the effect of releasing him.

The contract provided that Smith should pay to Pratt & Molleson for the work which they covenanted to perform the sum of $30,000, " as follows: In monthly payments not to exceeed eighty per cent (80 %) of the estimated value of the work performed on the building; the final payment to be made when the work is all complete, and after the expiration of thirty days, and after all the drawings and specifications have been returned to J. C. Cady and Co., Architects."

The variation of which defendant mainly complains is, that the plaintiff paid to Pratt & Molleson from time to time sums of money which aggregated more than eighty per cent of the estimated value of the work actually performed on the building. So that at the time when the plaintiff took the contract away from Pratt & Molleson, because of their failure to perform its conditions, there had been paid to them a greater sum than was due for work and material actually in the building.

It is undisputed that Pratt & Molleson were not possessed of funds requisite to the carrying out of the contract in accordance with its provisions, and from the inception of the work almost, the plaintiff from time to time made to them moderate advancements on account of the work which they had actually performed, with the purpose in view of enabling them, if possible, to fulfill their agreement. The advancements thus made never at any time exceeded eighty per cent of the value of the stone on hand and the work done thereon.

Briefly stated, if the contract only authorized payments not to exceed eighty per cent of the materials furnished and work done on such stone as was actually set in the building, plaintiff made an overpayment, but if it authorized a payment of eighty per cent of the work actually performed, whether on stone set in the building or those not set, but wholly or partially ready for setting, then the payments were not in excess. In construing this provision of the contract, it should be borne in mind that while it was intended to secure to the contractors a portion of the contract price from time to time as the work proceeded, it was also intended as a protection to the plaintiff against the payment of so large a sum as to leave the amount remaining unpaid insufficient to insure performance on the part of the contractors. Thus the monthly payments were lim-

ited to a sum not exceeding eighty per cent of the estimated value of the work performed.

Now, the granite which the contractors were to furnish had to be taken out of the quarries in Nova Scotia, thence conveyed to Niantic, Conn., where it was cut and put in readiness to be set in the building, and then taken to New York and placed in position as the work progressed.

Necessarily, therefore, the larger part of the expense of the contractors in performing their work was incurred before the stone was set in the building. The fact that a provision for monthly payments to be based on estimates furnished shows that the parties to the contract appreciated that it was necessary for the contractors that payments should be made at short intervals to enable them to go on with the work. Having this purpose in view, it was but reasonable and apparently in furtherance of their general object to authorize payments based on work actually performed, including stone wholly or partially ready for setting as well as that set. This is the construction of the contract which the parties themselves by their conduct gave to it before any of the stone was set. After the stone had been taken from the quarries in Nova Scotia to Niantic and cut, the contractors applied for a payment on account, and the plaintiff, accompanied by one of the architects superintending the construction of the building, visited the yard at Niantic where the stone was being dressed, examined it, made an estimate of its value, and on that basis an advancement to the contractors of a sum less than eighty per cent of the estimated value was made.

Defendant contends that the construction thus placed upon it by the parties, and which seems to be the one intended by them, cannot prevail, because the language employed is that monthly payments are " not to exceed eighty per cent of the estimated value of the work performed on the building."

That the meaning of the phrase is that estimates shall be based solely on stone actually set. That work done in preparing it for setting, and delivering it on the ground, is not work " performed on the building." This construction, in the light of the circumstances surrounding the making of the contract, and the conduct of the parties thereunder, seems to us too narrow.

Webster in defining " on," gives as one of its meanings, " in reference or relative to." Adopting this meaning, and the provision so reads as to authorize an eighty per cent payment based on the estimated value of the work performed in reference or relative to the building.

This accords with the apparent intention of the parties as disclosed by the circumstances surrounding the making of the contract, and their action under it. And it is at the same time a reasonable construction, for the greater part of the labor performed and expense incurred by the contractors took place prior to the actual setting of the stone in the building.

But defendant calls attention to the fact that the eighty per cent was to be based on the estimated value, and she insists that the estimates were to be made by the architects, and that the estimates which they did make were based on stone actually in the building, so that, assuming the construction we have given to the contract to be the true one, still the payments were unauthorized by reason of an absence of proper estimates. The plaintiff's contract with the city did not provide for monthly payments based on estimates, but, on the contrary, that plaintiff should not be entitled to demand payment for any portion of the work until it should be entirely completed.

The agreement further provides, however, that if the commissioners should direct, the architects should make estimates from time to time of the value of the work performed, upon which the commissioners could make payments in their discretion, not exceeding eighty per cent, provided the value of the work certified in such estimates should amount to $20,000.

But when the plaintiff came to sub-contract the granite work to Pratt & Molleson, he agreed to make monthly payments, and without reference to the value of the work performed.

Now, the estimates to which defendant refers were made by the architects under the contract between plaintiff and the city, and they were delivered to the commissioners of the department of public parks having the matter in charge.

It is clear, therefore, that it could not have been upon such estimates that the parties intended to base monthly payments.

Nowhere in the agreement between plaintiff and Pratt & Molleson is it provided in terms by whom the estimates should be made. But it is fair to presume, we think, that it was expected that the architects would make them.

The plaintiff testifies that Mr. Berg, one of the firm of J. C. Cady & Co., architects, had substantial charge of the building, and that Alfred B. Sharpe was superintendent in charge of the building under them, and that Mr. Sharpe made with plaintiff examinations of the work done by Pratt & Molleson, and that occasionally Mr. Berg made examinations also. Sharpe testified: "I superintended the work for Cady & Co., reporting to them. I was called upon to go up to Niantic to investigate the amount of granite that might be found there, to find out for J. C. Cady & Co. how much was there. * * * In reference to the contract of James B. Smith, * * * I may have gone a dozen times. * * * I went through the yard and examined the amount of granite that was there and calculated how much was there and reported * * * In a way I reported it to Mr. Smith also. I did so more to govern his control with the contractors than anything else — to urge the work and partly in regard to payments. * * * My report to Mr. Smith was in the nature of a voucher to Mr. Smith, and in the nature of orders from J. C. Cady & Company to push the work. I made one report as to the amount of granite in the place at Niantic, and another as to the amount that was actually put in the building." The testimony quoted is supported by other testimony in the case, and shows that the formal estimate made by the architects, in accordance with the contract between this plaintiff and the city, and filed with the commissioners, was only intended as a basis for the commissioners to determine what, if any, amounts should be paid to the plaintiff as the work progressed. It did not include anything except materials actually put in the structure. For the purposes of such an estimate it was wholly unnecessary to go to Niantic and determine the value of the stone there and the work done thereon. Such an examination and estimate was only valuable as between Smith and his sub-contractors, Pratt & Molleson.

It furnished a basis for the eighty per cent payment to them, which was authorized, as we have observed, by the terms of the contract. And the estimates thus made and acted upon by both parties

constitute a reasonable compliance with the provisions of the agreement.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.